IN THE SUPREME COURT OF NORTH CAROLINA

2021-NCSC-96

No. 449A20

Filed 27 August 2021

IN THE MATTER OF: J.E.H., J.I.H., K.T.B., Q.D.B., I.T.B.

Appeal pursuant to N.C.G.S. § 7B-1001(a1)(1) from an order entered on 6 August 2020 by Judge William F. Helms III in District Court, Union County. This matter was calendared for argument in the Supreme Court on 21 June 2021 but determined on the record and briefs without oral argument pursuant to Rule 30(f) of the North Carolina Rules of Appellate Procedure.

*Perry, Bundy, Plyler & Long, LLP, by Ashley J. McBride, for petitioner-appellee Union County Division of Social Services.*

*No brief for appellee Guardian ad Litem.*

*Richard Croutharmel for respondent-appellant mother.*

EARLS, Justice.

¶ 1 Respondent-mother appeals from the trial court's order terminating her parental rights to J.E.H. (Jerry), J.I.H. (Jimmy), K.T.B. (Kenny), Q.D.B. (Quentin), and I.T.B. (Iris).[1] Counsel for respondent-mother has filed a no-merit brief under Rule 3.1(e) of the North Carolina Rules of Appellate Procedure. We conclude the issues

---

[1] Pseudonyms used in this opinion to protect the juveniles' identities and for ease of reading.

identified by counsel as arguably supporting the appeal are meritless and therefore affirm the trial court's order.

¶ 2        On 19 June 2018, the Union County Division of Social Services (DSS) filed juvenile petitions alleging that Jerry and Jimmy, who are twins, were neglected and dependent juveniles. The petitions alleged that on 17 June 2018, respondent-mother took Jimmy to the emergency department and he was admitted to the hospital, where he was diagnosed with failure to thrive. The petition noted that hospital employees were concerned about respondent-mother's ability to care for the twins. The petition further noted earlier reports to DSS that respondent-mother received no prenatal care while pregnant with the twins, who were born prematurely; she was diagnosed with postpartum depression soon after their birth; and she did not have adequate supplies such as diapers, formula, and clothing for the twins. The petition alleged DSS supplied the children with formula and diapers, but respondent-mother continued to fail to provide those items. Later juvenile petitions concerning the other children noted that a social worker reportedly observed the children being fed Carnation evaporated milk instead of formula.

¶ 3        On 18 June 2018, a Child and Family Team Meeting was held, and respondent-mother indicated she was unable to care for the children.[2] She consented to the

---

[2] The narratives attached to the juvenile petitions for Jerry and Jimmy refer to the neglect and dependent status of three other children of respondent-mother, none of whom are the subject of this appeal.

children's placement with family or in foster care. DSS obtained nonsecure custody of Jerry and Jimmy on 19 June 2018. Following Jimmy's discharge from the hospital, he and Jerry were placed in a licensed foster home.

On 11 July 2018, respondent-mother entered into a case plan to facilitate reunification with Jerry and Jimmy, which identified her needs in the areas of employment, housing and basic needs, emotional and mental health, and parenting and life skills. On 30 July 2018, respondent-mother entered into an In-Home Service Agreement to address her needs as they related to her other children, Kenny, Quentin, and Iris, who resided with their father.

Following a hearing on 22 August 2018, the trial court entered an order on 20 September 2018 that adjudicated Jerry and Jimmy as neglected and dependent juveniles. Respondent-mother was allowed one hour of supervised visitation weekly. She was ordered to (1) sign releases to allow her service providers to share information with DSS and the guardian ad litem, (2) maintain monthly contact with DSS, (3) submit to random drug screens, (4) complete a global mental health assessment and comply with all recommendations, (5) complete parenting classes, (6) secure safe and stable housing, and (7) maintain legal income.

On 18 October 2018, DSS filed juvenile petitions alleging the neglect and dependency of Kenny, Quentin, and Iris. The petitions alleged respondent-mother had failed to address the needs identified in her In-Home Service Agreement, as the

children were not being provided necessary school uniforms and supplies; respondent-mother lost her job and was still without housing; respondent-mother was not scheduling medical and dental appointments for the children; respondent-mother failed to attend her scheduled mental health sessions and parenting classes; and respondent-mother was left unsupervised with Kenny and Quentin in violation of the safety plan.

¶ 7        Following a hearing on 14 November 2018, the trial court entered an order on 18 December 2018 that adjudicated Kenny, Quentin, and Iris as neglected and dependent juveniles. The court ordered that the children remain with their father in the home of their paternal grandmother. Respondent-mother was allowed visitation supervised by the children's father or their paternal grandmother. She was required to comply with her case plan and attend parenting classes; attend medication appointments; transport Iris to school on time; and address the children's well-being, needs, and recommended services.

¶ 8        Before the adjudication order was entered, on 5 December 2018, DSS filed additional juvenile petitions, again alleging that Kenny, Quentin, and Iris were neglected and dependent juveniles. The petitions alleged that during a home visit on 25 October 2018, a social worker observed a gun lying on the couch in the living room where Kenny was playing. It was undetermined whether the gun was loaded, though the owner of the gun asserted it was not. The petitions also noted a report to DSS on

3 December 2018 that indicated the children were often seen outside running across the road with no parental supervision, respondent-mother was seen outside yelling at and physically disciplining Iris, respondent-mother was at risk of being evicted from her apartment due to complaints to management, and it was believed respondent-mother was with the children unsupervised at the apartment. The petitions also alleged respondent-mother remained noncompliant with her case plan requirements, noting her failure to complete mental health treatment and parenting classes and to schedule medical visits for the children. Further, when a social worker arrived at the home to transport the family to a Child and Family Team Meeting, she was refused entry to the home, the family did not attend the meeting, and neither respondent-mother nor the children's father contacted the social worker regarding the missed meeting. DSS sought and obtained nonsecure custody of the children on 5 December 2018.

¶ 9        Following a hearing on 9 January 2019, the trial court entered an order on 21 February 2019, again adjudicating Kenny, Quentin, and Iris as neglected and dependent juveniles. The court ordered custody of the children to remain with DSS. Respondent-mother was allowed a minimum of one hour of supervised visitation a week, and she was ordered to comply with her case plan, sign releases with her service providers, maintain monthly contact with DSS, and submit to random drug screens.

Following a permanency-planning hearing on 12 June 2019, the trial court entered an order on 11 July 2019 setting the primary permanent plan for Jerry, Jimmy, Kenny, Quentin, and Iris as adoption, with a secondary concurrent plan of guardianship with a relative or court-approved caretaker. On 6 August 2019, DSS filed a termination-of-parental-rights petition for all five children. The grounds alleged to terminate respondent-mother's parental rights were (1) her neglect of each of the children, (2) her leaving Jerry and Jimmy in foster care or a placement outside the home for more than twelve months without a showing of reasonable progress to correct the conditions that led to their removal, (3) her failure to pay a reasonable portion of the cost of care for all five children in the preceding six months, and (4) her inability to provide proper care and supervision of all the children rendering them dependent juveniles. *See* N.C.G.S. § 7B-1111(a)(1)–(3), (6) (2019).

Following a hearing on 1 and 2 July 2020, the trial court entered an order on 6 August 2020 adjudicating the existence of the grounds alleged in the termination petition. The court also concluded that it was in the children's best interests to terminate respondent-mother's parental rights and ordered that her rights in all five children be terminated.[3] Respondent-mother appeals.

Respondent-mother's counsel has filed a no-merit brief pursuant to Rule 3.1(e)

---

[3] The parental rights of the children's fathers—known, putative, and unknown—were also terminated. They are not parties to this appeal.

of the Rules of Appellate Procedure. In the brief, counsel identified certain issues relating to the adjudication and disposition portions of the termination proceeding that could arguably support an appeal, including whether the trial court properly found grounds existed for the termination of respondent-mother's parental rights and whether the trial court abused its discretion by determining that termination of respondent-mother's parental rights was in the children's best interests, but explained why he believed the issues lacked merit. Counsel also advised respondent-mother of her right to file pro se written arguments on her own behalf and provided her with the documents necessary to do so. Respondent-mother, however, has not submitted any written arguments to this Court.

¶ 13      This Court independently reviews issues identified by counsel in a no-merit brief filed pursuant to Rule 3.1(e) to see if the issues have potential merit. *In re L.E.M.*, 372 N.C. 396, 402 (2019). After careful review of the issues identified in the no-merit brief in this matter in light of the record and applicable law, we are satisfied that the 6 August 2020 order is supported by clear, cogent, and convincing evidence and is based on proper legal grounds. Accordingly, we affirm the trial court's order terminating respondent-mother's parental rights.

AFFIRMED.